UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**TRAVIS WADE FRAZIER,**

Plaintiff,

v.

**No. 4:25-cv-00469-P**

**DIRECTOR, TDCJ-CID,**

Defendant.

### MEMORANDUM OPINION AND ORDER

The matters before the court are (1) Frazier's federal habeas corpus petition, amended petition, and brief in support (ECF Nos. 1-3); (2) Respondent's Answer, filed August 14, 2025 (ECF No. 14); and (3) Frazier's Reply brief, filed August 28, 2025 (ECF No. 17). For the reasons set forth below, Frazier is entitled to neither federal habeas corpus relief nor a Certificate of Appealability from this Court.

### BACKGROUND

#### I.      Indictment

On July 2, 2021, a Tarrant County grand jury indicted Frazier in cause No. 1690859 on two counts of continuous sexual abuse of a child or children (Counts one and two) and thirteen counts alleging individual acts of aggravated sexual assault of a child or indecency with a child (Counts three through fifteen).

#### II.     Guilt Innocence Phase of Trial

The guilt-innocence phase of Frazier's trial commenced on July 27, 2021. The Texas Court of Appeals' opinion affirming Frazier's conviction summarized the testimony at the guilt-innocence phase of Frazier's trial as follows:

Frazier and his wife P.F. have been married for over thirty-five years. They have two sons, Z.F.[1] and [Z.F.'s brother]. In August 2018, Z.F. and his wife A.M. lived just down the road from his parents with A.M.'s daughter V.M., age seven, Z.F.'s daughter O.F., age five, and their child together [their sister], age one.

Z.F., A.M., and their girls were very close to Frazier and P.F., whom the girls called Paw Paw and Nona. Frazier and P.F. often hosted family events at their house, and from 2014 to 2018 they regularly babysat V.M. and O.F. on the weekends.

* * *

In March 2018, during a tickle fight with her other grandmother Martha (A.M.'s step-mother), O.F. pointed to her privates and said, "[T]ickle me there, like Paw Paw does," clarifying that by "Paw Paw" she meant Frazier. Martha told O.F. that no one should ever touch her there except her mother or a doctor. She then asked V.M. if Frazier had ever tickled her there, and V.M. replied that he had not.

Martha told A.M. what O.F. had said, and Z.F. and A.M. decided to contact Child Protective Services (CPS). In the interview with CPS, O.F. "clammed up" and did not verify the claim of abuse. As a result, CPS determined that it could not substantiate the claim. Because the abuse was unsubstantiated, Z.F. and A.M. continued to allow the girls to visit Frazier and P.F.'s house.

* * *

In October 2018, V.M. told her mother A.M. that Frazier had been abusing her. V.M. described how Frazier had "show[n] her his privates and ma[de] her play with them … with her hands and mouth." V.M. stated that this had been happening since she was in kindergarten, usually while P.F. was asleep on the couch. V.M. said that Frazier had warned her not to tell anyone because Nona and her parents would be mad at her. A.M. recorded V.M. account

---

[1]The Court of Appeals' opinion on direct appeal identifies one of Frazier's sons using the pseudonym "Zane." This Court will refer to Z.F.'s brother by that moniker. For purposes of this opinion, child victim O.F.'s father is designated by "Z.F." and the mother of child-victim V.M. is designated as "A.M." The two child-victims are designated as "O.F." and "V.M.," respectively.

on her phone, and the next day she and Z.F. reported the abuse to the police.

Alexis Harrison, a forensic interviewer at Alliance for Children, conducted V.M.'s forensic interview. V.M. told Harrison that Frazier had asked her to play with his private part and had kept asking until she complied. V.M. told Harrison about additional acts of abuse not previously disclosed to her mother, including Frazier touching V.M.'s genitals with his hand, penetrating her vagina with his finger, and performing oral sex on her. V.M. recounted for Harrison many specific details of the abuse, including where it occurred—typically in Frazier's bedroom while P.F. was asleep, the positions of V.M.'s and Frazier's bodies during the abuse, and the "frosting" Frazier used as lubricant. V.M. also chronicled the timeline of the abuse, telling Harrison that it had started when V.M. was six years old and in the first grade and that the last time it had happened was when she was six years old and in the second grade.

\* \* \*

In March 2019, O.F. revealed to Z.F. that Frazier had abused her as well. After Z.F. reported this to the police, Harrison conducted a forensic interview. During the interview, O.F. described many details of the abuse, including that Frazier had touched her private parts on many occasions in his bathroom, that she had put her mouth on his private part, and that he had put his private part on hers.

\* \* \*

At trial, A.M. and Harrison both testified as outcry witnesses for V.M. Z.F. and Harrison both testified regarding O.F.'s outcry. The sexual assault nurse examiners (SANEs) who examined the girls also testified. [Specifically, SANE Theresa Fugate described what V.M. told her during an October 11, 2018 examination about her history of sexual abuse by Frazier.]

In addition to testifying as a fact witness, Harrison provided expert testimony regarding the dynamics involved when children disclose chronic sexual abuse by a family member. Harrison explained that children who are abused at a young age often experience confusion and conflicting emotions, which, combined with a tendency to

3

see everything as their fault, can cause them to delay reporting the abuse. She also explained that children typically disclose sexual abuse gradually, sometimes engaging in "toe-dipping" in which they reveal just enough to make the abuse stop and then wait to see what happens next. Harrison also described the nature of grooming, the process by which an abuser manipulates not only the victim but also the adults in the victim's life to gain unfettered access to the victim. Finally, Harrison described the nature and goals of a forensic interview, particularly the importance of eliciting sensory and peripheral details, which play a crucial role in evaluating a child's credibility.

Lindsey Dula, Director of Program Services at Alliance for Children, who had never met V.M., O.F., or their parents but reviewed the victims' forensic interviews, testified as an expert witness in the fields of forensic interviewing and child sexual abuse and its effects. While Dula explained some of the same concepts as Harrison such as "toe-dipping" and the importance of sensory and peripheral details, she also highlighted the significance of particular details—such as V.M.'s recollection of conversations with Frazier and particular instructions he had given her—in a way that Harrison's testimony had not. Moreover, Dula's testimony also covered areas that Harrison had not addressed at all, such as the difference between a true outcry and an accidental disclosure. She also testified regarding the impact that the three-year delay between the outcries and the trial might have had on these victims' testimony, explaining that children's memories deteriorate over time and that children learn embarrassment as they get older, which can inhibit their ability to speak about past abuse.

\* \* \*

Frazier's defense at trial involved attacking the credibility of the victims' accounts. P.F. and [Z.F.'s brother] both testified that they believed that Z.F. and A.M. had coached the girls into making up the allegations against Frazier. [Z.F.'s brother] stated that Z.F. and A.M. had gotten into a big argument with his parents shortly before the outcries and that he believed that they were capable of coaching their girls to lie. The defense also suggested that the girls' accounts may have resulted from the girls' having

4

been exposed to pornography or overhearing sexual conversations in their home.

*Frazier v. State*, No. 02-21-00115-CR, 2022 WL 5240393, *1-2 (Tex. App.—Fort Worth, October 6, 2022), PDR ref'd April 26, 2023 [headings and footnotes omitted; pseudonyms redacted].

On August 5, 2021, the trial court submitted its jury charge at the guilt-innocence phase of trial, instructing the jury to address one Count of continuous sexual abuse of a child and twelve of the individual act Counts. The jury returned its verdict, finding Frazier guilty of Count One and, consistent with the trial court's jury charge, did not address any of the remaining Counts.[2]

The punishment phase of Frazier's trial took place on August 6, 2021, where the jury returned its verdict of thirty-five years of imprisonment.[3]

### III.    Procedural History

Frazier filed a motion for new trial on September 7, 2021, arguing the trial court erred in declaring one juror disabled because he was not vaccinated for COVID and allowing the trial to proceed with only eleven jurors after one juror tested positive.[4] The state trial court denied that motion on October 18, 2021.[5]

Frazier appealed.[6] The Texas Second Court of Appeals affirmed. *Frazier v. State*, No. 02-21-00115-CR, 2022 WL 5240393 (Tex. App.— Fort Worth, Oct. 6, 2022), PDR Ref'd April 26, 2023.

Frazier filed his initial application for state habeas corpus relief on March 29, 2024, arguing that his trial counsel rendered ineffective assistance during the guilt-innocence phase of trial.[7] The state responded to the habeas application by submitting an affidavit jointly

---

[2] Reporter's Record from trial (henceforth "R.R."), volume 9, at 6-8 [ECF No. 16-10, at 6-8 of 9]. The verdict form from the guilt-innocence phase of Frazier's trial appears at ECF No. 16-1 at 194-207 and ECF No. 16-30 at 174-79, 190.

[3] 10 R.R. 48-49 [ECF No. 16-11 at 48-49]. The verdict form from the punishment phase of Frazier's trial appears at ECF No. 16-1 at p. 21.

[4] ECF No. 16-1 at 249-59.

[5] ECF No. 16-1 at p. 288.

[6] ECF No. 16-13.

[7] ECF No. 16-30 at 16-35.

executed by his two former trial counsel.[8] The state habeas court held an evidentiary hearing on Frazier's state habeas application on July 29, 2024.[9] In his Findings and Order issued October 29, 2024, the magistrate adopted the State's proposed findings of fact and conclusions of law and recommended that Frazier's initial state habeas application be denied.[10] The following day, the state district court issued an Order adopting the magistrate's actions and recommendation.[11] On November 4, 2024 Frazier filed his objections to the district court's findings and conclusions, as well as a supplemental affidavit from Dr. Thorne.[12] On March 26, 2025, the Texas Court of Criminal Appeals ("TCCA") denied Frazier's initial state habeas application without written order based on the trial court's findings and its own independent review of the record. *Ex Parte Frazier*, WR-96,000-01 (Tex. Crim. App. Mar. 26, 2025).[13]

Frazier filed his original and amended federal habeas corpus petitions and his brief in support to this court on April 9, 2025 (ECF Nos. 1-3). In those pleadings, he argued that his trial counsel rendered ineffective assistance during the guilt-innocence phase in ways detailed below. Respondent answered, agreeing that Frazier had exhausted state remedies on all of his ineffective assistance claims (ECF No. 14). Frazier filed a reply on August 28, 2025, where he demanded *de novo* review of his claims from this Court (ECF No. 17).

## LEGAL STANDARD

The Court's review of Frazier's claims for federal habeas corpus relief is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001). The legislative

---

[8] ECF No. 16-30 at 250-58.

[9] ECF No. 16-32 at 12-366 of 464.

[10] ECF No. 16-30, at 371-73 of 376.

[11] ECF No. 16-30, at 374 of 376.

[12] Frazier's objections and Dr. Thorne's affidavit dated November 4, 2024 appear at ECF no. 16-31, at pp. 4-15 and pp. 16-34 of 36, respectively.

[13] Copies of the notice cards sent by the TCCA to all the parties and their counsel appear at ECF No. 16-33.

history of the AEDPA indicates that it was intended to limit the scope of federal habeas review and to reduce delays in the execution of state and federal criminal sentences. *Ryan v. Valencia Gonzales*, 568 U.S. 57, 76 (2013); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *Rhines v. Weber*, 544 U.S. 269, 276 (2005). It also aimed to encourage litigants to pursue claims in state court prior to seeking federal collateral review and to prevent piecemeal litigation and gamesmanship. *Duncan v. Walker*, 533 U.S. 167, 181 (2001); *see also Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997); *Maywood v. Patterson*, 561 U.S. 320, 334 (2010). Under the AEDPA, federal habeas review of claims is limited to the state court's record which adjudicated the prisoner's claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Under the AEDPA standard of review, this Court cannot grant Frazier federal habeas corpus relief regarding any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Davenport*, 569 U.S. 118, 135-36 (2022); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. § 2254(d)(1) have independent meanings. Bell v. Cone, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). "[T]he state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

7

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010); *Wiggins*, 539 U.S. at 520-21. Notably, an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003). Under the AEDPA, "a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)).

Legal principles are "clearly established" when the holdings, as opposed to the dicta, of Supreme Court decisions existing at the time of the relevant state-court decision establish those principles. *Brown*, 596 U.S. at 136; *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004).

AEDPA also significantly restricts the scope of federal habeas review of state court fact findings. Subsection 2254(d)(2) of Title 28, United States Code, provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Wood v. Allen*, 558 U.S. 290, 301(2010); *Williams v. Taylor*, 529 U.S. at 410. Even if reasonable minds reviewing the record might disagree about the factual finding in question, this does not suffice to supersede the trial court's factual determination. *Wood*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, § 2254(e)(1) provides that a federal habeas petitioner

8

challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro*, 550 U.S. at 473-74; *Rice*, 546 U.S. 333, 338-39 (2006); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005); 28 U.S.C. §2254(e)(1). It is unclear whether § 2254(e)(1) applies in every case challenging a state court's factual findings under § 2254(d)(2). *See Wood*, 558 U.S. at 300-01 (choosing not to resolve the issue of § 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of § 2254(e)(1)).

Before a federal court may grant a state prisoner habeas corpus relief on a claim that was adjudicated on the merits in state court, the petitioner must also convince the court that the error committed by the state court during the case was not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Brown v. Davenport*, 596 U.S. 118, 122 (2022). In *Shinn v. Jenkins*, 596 U.S. 366, 378 (2022), the Supreme Court held that when a federal habeas petitioner has properly exhausted state court remedies on a federal constitutional claim through direct appeal or a state habeas corpus proceeding, federal habeas review of that claim is limited to reviewing the state court's record and the petitioner must establish that, under Supreme Court precedent, no fair-minded jurist could have reached the same result as the state court. *See Shoop v. Twyford*, 596 U.S. 811, 819-20 (2022).

Without showing an absence of available state corrective processes or that such processes are ineffective to protect the rights of a petitioner, this Court is statutorily precluded from granting federal habeas corpus relief on any claim that has not been fairly presented to the state courts. *Davila v. Davis*, 582 U.S. 521, 527 (2017); 28 U.S.C. § 2254(b)(1). Nonetheless, this Court is authorized to *deny* federal habeas relief on the merits notwithstanding a petitioner's failure to exhaust available state court remedies. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005); 28 U.S.C. § 2254(b)(2).

If the state courts failed to adjudicate a claim on the merits that Frazier now presents to this Court (such as claims (1) the state courts summarily dismissed under the Texas writ-abuse statute or Texas rules

9

of procedural default or (2) which Frazier failed to fairly present to the state courts), then this Court's review of the un-adjudicated claim is de novo. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005); *Wiggins*, 539 U.S. at 534.

## ANALYSIS

### I.    Ineffective Assistance by Trial Counsel Under AEDPA

#### 1.    <u>Clearly Established Federal Law</u>

Frazier's ineffective assistance claim is premised upon his trial counsels' alleged failure to comply with the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases. Notably, the ABA's Guidelines are not the standard of *judicial* review for the performance of trial counsel. *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009).

Instead, the constitutional standard was announced by the Supreme Court in *Strickland*, 466 U.S. at 687:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that his trial counsel's conduct "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of

legitimate decisions regarding how best to represent a criminal defendant." *Bobby*, 558 U.S. at 7 (quoting *Strickland*, 466 U.S. at 688-89). The Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant decisions using reasonable, professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Thornell v. Jones*, 602 U.S. 154, 163 (2024); *Strickland*, 466 U.S. at 694. "This requires a substantial, not just conceivable, likelihood of a different result." *Jones*, 602 U.S. at 163; *Pinholster*, 563 U.S. at 189.

In instances in which the state courts failed to adjudicate either prong of the *Strickland* test, this Court's review of the un-adjudicated prong is *de novo. See Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005).

Under the AEDPA, claims of ineffective assistance adjudicated on the merits by a state court are entitled to a doubly deferential form of federal habeas review. The AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013). Under 28 U.S.C. § 2254(d)(1), a state prisoner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Wheeler,* 577 U.S. 73, 77 (2015) (internal quote omitted).

2. <u>Overview of the Claims</u>

Frazier argues that his trial counsel rendered ineffective assistance by (1) failing to file a motion in limine and object to testimony by (a) the complainants' parents and other prosecution witnesses regarding the

11

credibility of the complainants and (b) a police detective's opinion that Frazier was guilty; (2) failing to file a motion in limine and object to opinion testimony by prosecution witnesses that Frazier was guilty; (3) eliciting testimony from Z.F. that Frazier was a violent and angry individual; (4) failing to discover and present evidence showing that Z.F and A.M. were motivated to coach the complainants to make their outcry; and (5) failing to object to improper prosecutorial comments during the cross-examination of P.F. (ECF No. 3, at pp. 17-32).

The TCCA rejected all of Frazier's ineffective assistance claims *on the merits*, based upon the state trial court's findings and its own independent review of the record.

### 3. AEDPA Review

#### a. Failure to File Motion in Limine and Object to Opinion Testimony Regarding Credibility

Frazier argues that his defense counsel rendered ineffective assistance by failing to file a motion in limine and object to witness testimony regarding the credibility of the complainants' outcries and trial testimony. (ECF No. 3, at pp. 17-21). The state trial court concluded this claim failed to satisfy both prongs of *Strickland*,[14] finding that (1) A.M. did *not* testify about the credibility of the complainants' outcries or trial testimony; (2) while Z.F. insisted on direct examination that V.M. could not lie, he admitted on cross-examination that V.M. and O.F. occasionally lied; (3) Frazier's defense counsel knew from prior child sexual assault cases that jurors empathize with victims' parents, and aggressively attacking the parents often alienates the jury; (4) defense counsel acted reasonably in rebutting Z.F.'s assertions regarding complainants' credibility during cross-examination rather than objecting to his claimed improper opinion testimony on direct; (5) defense counsel effectively impeached Z.F.'s opinion testimony regarding the complainants' credibility; (6) neither SANE who testified at trial opined as to the credibility of either complainant; (7) on cross-examination, Frazier's defense counsel elicited SANE Ledbetter to

---

[14] State trial court's findings of fact and conclusions of law (henceforth "FFCL" at Finding Nos. 17-46 [ECF No. 16-30, at 326-31 of 376] and Conclusion Nos. 19-34 [ECF No. 16-30, at 357-61 of 367].

admit that she felt obligated to assume complainant's statements were accurate during evaluation to properly do her job; (8) both SANE's testified they found no physical evidence of sexual abuse in their evaluations; and (9) defense counsel reasonably believed that any objections they made to the SANE's testimony that sexual abuse occurred would be overruled.

Notably, state trial court also concluded that (1) defense counsel's failure to file a motion in limine did not prejudice Frazier within the meaning of *Strickland*, because only Z.F. actually opined as to the credibility of either complainant and defense counsel effectively impeached Z.F. on cross-examination on this very point; and (2) the opinion testimony of the SANE's that sexual abuse took place was admissible and not subject to an objection by defense counsel.

This Court has carefully reviewed the trial testimony of the complainants and the remaining witnesses from the trial and evidentiary hearing held during Frazier's state habeas proceeding. The state trial court's findings and conclusions were eminently reasonable in view of the record from trial and the largely uncontradicted testimony of Frazier's lead attorney Luke Williams, given during the evidentiary hearing held in Frazier's initial state habeas proceeding.

It is undisputed that each of Frazier's counsel had experience trying child-sexual-assault cases in Tarrant County. Attorney Williams testified without contradiction that he and his co-counsel believed, based on their conversations with jurors in the aftermath of those trials, that attacking the credibility of complainants' parents too aggressively could negatively affect the credibility of defense counsel in the eyes of the jury. Based on their experience, Frazier's counsel also determined to minimize the number of times they objected to improper statements uttered by prosecution witnesses. The state habeas court reasonably concluded that Frazier's defense counsel's behavior regarding the opinion testimony of Z.F. was objectively reasonable and did not prejudice Frazier within the meaning of *Strickland*. Frazier has failed to present this Court with clear and convincing evidence showing that any of the state trial court's factual findings were erroneous. Likewise, the state habeas court reasonably concluded that there is no reasonable

probability that, but for the failures of Frazier's trial counsel to file a motion in limine or to object to Z.F.'s comments regarding the complainants' credibility, the outcome of the guilt-innocence phase would have been different. A motion in limine has little efficacy regarding testimony volunteered by a witness in a largely nonresponsive answer. Moreover, on cross-examination Frazier's attorneys greatly undermined Z.F.'s assertion that the complainants had never lied.

> b. *Failure to File Motion in Limine or Object to Detective's Testimony that Frazier Guilty*

Frazier argues that his trial counsel rendered ineffective assistance by eliciting a non-responsive answer from a police detective that Frazier was guilty (ECF No. 3, at pp. 22-25). The state trial court concluded that this claim failed to satisfy both *Strickland* prongs.[15]

More specifically, the state habeas court found that (1) defense counsel's questions resulted in detective Tank-Holland suggesting it was impossible in her mind that Frazier was innocent; (2) defense counsel then further cross-examined detective Tank-Holland where she admitted that (a) her focus was on determining if there was probable cause to arrest, (b) she had no personal knowledge regarding Frazier's guilt, (c) she could not state for a fact that Frazier was guilty, and (d) it was the jury's role to determine the credibility of the complaining witnesses; (3) Frazier's defense counsel effectively impeached the detective's non-responsive answer expressing her opinion of Frazier's guilt; and (4) defense counsel reasonably continued cross-examining the detective and eliciting admissions which effectively impeached and undermined the detective's non-responsive opinion regarding Frazier's guilt. The state habeas court concluded that (1) defense counsel's failure to object to the detective's non-responsive answer did not prejudice Frazier under *Strickland*, because the complainants' testimony established Frazier's guilt and the jury could logically assume that law enforcement officers would not forward a case if they did not believe in the evidence's credibility; and (2) this complaint failed to satisfy the

---

[15] FFCL at Finding Nos. 47-54 [ECF No. 16-30, at 331-35 of 376] and Conclusion Nos. 35-39 [ECF No. 16-30, at p. 361 of 367].

prejudice prong of *Strickland*.

It is objectively reasonable for the state habeas court to find that jurors would naturally assume that law enforcement officials, such as detective Tank-Holland, who forward their investigations to prosecutors believed in the credibility of a child-sex-abuse victim's outcry. It is also objectively reasonable for the state habeas court to conclude that Frazier's trial counsel more than adequately addressed the detective's non-responsive opinion regarding Frazier's guilt through further cross-examination rather than by immediately objecting thereto. The Supreme Court has long noted there are many different ways to try a lawsuit—this case is no different. *Strickland*, 466 U.S. at 689.

As for Frazier's complaints that his trial counsel failed to preemptively prevent all prosecution witnesses from implying they believed complainants' trial testimony was credible, the state habeas court accurately noted that jurors do not enter into their duties blind to the reality that law enforcement officials and prosecutors do not typically forward cases when believe in the complaining witness's account is uncredible. Thus, the state habeas court reasonably concluded this ineffective assistance complaint failed to satisfy the prejudice prong of *Strickland*.

### c. *Eliciting Testimony from Z.F. that Frazier was Violent and Angry*

Frazier argues his trial counsel rendered ineffective assistance by eliciting testimony from Z.F. on cross-examination that Frazier was a violent and angry person (ECF No. 3, at pp. 25-26). The state habeas court concluded that this complaint failed to satisfy either prong of *Strickland*, finding that (1) Frazier's defense counsel elicited Z.F.'s testimony to show that Z.F. had a negative view of Frazier, was biased against him, and would say anything to convict Frazier; (2) Frazier's defense counsel then impeached Z.F.'s testimony by presenting the testimony of Frazier's wife and other son, who each testified that Frazier was neither an angry nor violent individual; (3) Frazier's defense counsel did so to impeach Z.F.'s testimony that he had a good relationship with Frazier; and (4) Frazier's defense counsel thereby

15

showed that Z.F. was biased against Frazier.

The state habeas court reasonably concluded that defense counsels' decision to elicit Z.F.'s negative opinion of Frazier was objectively reasonable given the availability of other evidence refuting Z.F.'s negative view of Frazier and to show Z.F.'s assertion that he had a good relationship with Frazier was not credible. Further, it is equally objectively reasonable that Frazier was not prejudiced because his trial counsel rebutted this aspect of Z.F.'s testimony.

### d. Failure to Investigate and Present Evidence of the Parents' Aberrant Sexual Behavior

Frazier argues his trial counsel rendered ineffective assistance by failing to interview neighbors of the complaints' parents and failing to present evidence showing complainants' parents engaged in sexually aberrant behavior (ECF No. 3, at pp. 26-30). The state habeas court concluded that these complaints failed to satisfy both prongs of *Strickland*.[16]

More specifically, the state habeas court found that (1) Frazier's defense counsel elicited testimony that Z.F. was addicted to pornography, watched it at home, and A.M. was an unlicensed masseuse; (2) Frazier's counsel did so to show the parents were motivated to falsely accuse Frazier and that the complainants could have been exposed to sexual matters apart from Frazier; (3) when Frazier's counsel elicited evidence about Z.F.'s pornography addiction, the trial court limited the defense to asking about pornography and whether the complainants were exposed to it; (4) when Frazier's counsel elicited testimony about A.M.'s work as an unlicensed masseuse, the trial court also limited the defense to questioning A.M.'s work status and complainants' exposure to sexual matters; (5) during the evidentiary hearing in state court, Frazier presented evidence showing (a) Z.F. used social media to solicit men into three-way sex with himself and A.M. and (b) A.M. offered sexual services as an unlicensed masseuse; (6) Frazier's counsel never offered any evidence showing Z.F. or A.M. exposed

---

[16] FFCL, Finding Nos. 77-108 [ECF No. 16-30, at 340-44 0f 376] and Conclusion Nos. 50-70 [ECF No. 16-30, at 362-65 of 376].

complainants to anything sexual; (7) Frazier's trial counsel testified during the evidentiary hearing that they did not introduce further evidence of Z.F. or A.M.'s aberrant sexual behavior because (a) without evidence of exposure to the complainants, such evidence was only remotely relevant to Frazier's case, (b) the trial court had limited the defense to showing whether the complainants had been exposed to sexual matters, and (c) smearing the reputations of Z.F. or A.M. risked alienating the jury; (8) thus, even if Frazier's counsel had obtained additional evidence of aberrant sexual behavior, it would not have changed how defense counsel tried the case; and (9) this decision was objectively reasonable.

The state habeas court concluded, that (1) Frazier failed to prove that any of the evidence regarding Z.F. or A.M.'s alleged aberrant sexual behavior by was relevant and admissible; (2) Frazier's counsel reasonably concluded that introducing inflammatory evidence of the parent's sex life could alienate the jury; (3) Frazier failed to prove the trial court would have admitted (or abused its discretion in excluding) additional evidence of aberrant sexual behavior; and (4) Frazier failed to show a reasonable probability of a different outcome had counsel obtained such evidence.

The foregoing factual findings by the state habeas court are fully supported by the record before that court, which included the record from trial and all evidence admitted during Frazier's initial state habeas proceeding. The state habeas court reasonably concluded that these complaints of ineffective assistance failed to satisfy either prong of *Strickland*. Frazier's defense counsel cannot reasonably be faulted for failing to investigate, develop, and present evidence which in all reasonable likelihood the state trial court would have excluded as irrelevant. Absent any evidence showing the complainants were exposed to the alleged aberrant sexual behavior of Z.F. or A.M., the state habeas court reasonably concluded there was no reasonable probability that, but for the failure of Frazier's defense counsel to investigate, develop and present additional evidence of aberrant sexual behavior by Z.F. or A.M., the outcome of Frazier's trial would have been any different. Even now, Frazier presents this court with no fact-specific allegations or

17

evidence, showing that complainants were exposed to any aberrant sexual behavior by Z.F. or A.M.

### e. Failure to Object to Improper Prosecutorial Jury Argument

Frazier argues his trial counsel rendered ineffective assistance by failing to object to improper prosecutorial jury argument, specifically the prosecutor's statements (a) "I do not put liars on the stand." (8 R.R. 58); and (b) "I do not put innocent men in prison. I put guilty ones in." (8 R.R. 67). The state habeas court found these complaints failed both prongs of *Strickland*.[17]

More specifically, the court found that (1) Frazier's counsel accurately anticipated and identified the prosecution's appeal to emotion during the guilt-innocence phase (8 R.R. 42-43, 56); (2) the prosecution made all of the allegedly improper jury arguments identified; (3) Frazier's trial counsel acted reasonably in preemptively arguing the prosecution would rely upon emotion rather than evidence and logic, instead of objecting to the prosecution's self-bolstering outside the record; (4) a reasonable jury would naturally presume the prosecutor's motivations, regardless of the improper comments; and (5) there was no reasonable probability that, but for counsel's failure to object, the outcome of the guilt-innocence phase would be different.

The decision whether to object to improper prosecutorial jury argument generally lies within the broad range of strategic decision-making afforded defense counsel. *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992). Here, the state habeas court found that Frazier's trial counsel (1) reasonably anticipated the prosecution's emotional arguments and (2) forewarned the jury that the prosecution's closing argument would rely on emotion rather than evidence. The state habeas court reasonably found that the prosecutor's improper closing argument did not disclose anything a rational juror could not have assumed—mainly, that the prosecution believed in the complainants' credibility and that the prosecutors would not knowingly seek to convict an innocent defendant. During the state habeas proceeding, Frazier's lead counsel testified

---

[17] FFCL, Finding Nos. 178-90 [ECF No. 16-30, at 352-54 of 376] and Conclusion Nos. 75-76 [ECF No. 16-30, at p. 365 of 376].

without contradiction that they aimed to minimize objections at trial to avoid appearing like they concealed anything from the jury and to contrast their professionalism with the prosecution's emotional appeals.

Thus, it was objectively reasonable for the state habeas court to conclude that defense counsel's failure to object to the improper closing argument satisfied neither prong of *Strickland*.

### f. *Conclusions Under AEDPA Review*

Complainant O.F. testified at trial that Frazier touched her genitalia on multiple occasions when she spent the night with him and that she felt confused and angry that he had done it (5 R.R. 178-90, 194-96). O.F. denied that she had been coached by her mother regarding her testimony (5 R.R. 213-14). Complainant V.M., testified in far more graphic detail regarding the sexual abuse and the things Frazier directed her to do (5 R.R. 252-59, 261, 263-71). V.M. also testified that she finally told her mother after several years of abuse because she did not want her younger sisters to endure the same things she had (5 R.R. 273). The state habeas court reasonably concluded there was no reasonable probability that, but all of Frazier's assertions of deficient performance by his trial counsel, the outcome of the guilt-innocence phase of trial would have been any different.

Despite Frazier's number of claims of ineffective assistance raised in this Court and in the state habeas court, the TCCA's ultimate conclusion that Frazier failed to satisfy the prejudice prong of *Strickland* was eminently reasonable. This is because Frazier's complaints about the performance of his trial counsel did not create a reasonable probability of a different outcome. The complaints bear little relevance to the persuasive nature of the complainants' testimony.

On the contrary, V.M. testified without contradiction at trial that she overheard her parents using the term "sexual abuse" (5 R.R. 286-87). But there was no evidence she was ever exposed to any type of sexual matter or sexual behavior by anyone other than Frazier.

## II.    *De Novo* Review

Alternatively, for the same reasons discussed at length above, this

Court concludes after conducting *de novo* review of the entire record before this Court that Frazier's ineffective assistance claims collectively fail to satisfy the prejudice prong of *Strickland*. Frazier's jury had the opportunity to view the demeanor and make its own determinations regarding the credibility of the two complainants. The state trial court clearly instructed the jury that it was the exclusive judge of the credibility of the witnesses. (ECF No. 16-1, at p. 192 of 290). Juries are presumed to follow their instructions. *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993).

### III.    Certificate of Appealability

Under AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability ("CoA"). *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2). Likewise, under AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted. *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted). In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted. *Crutcher*, 301 F.3d at 658 n.10; 28 U.S.C. § 2253(c)(3).

A CoA will not be granted unless a petitioner makes a substantial showing of the denial of a constitutional right. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. *Tennard*, 542 U.S. at 282; *Miller-El*, 537 U.S. at 336. This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United*

*States District Courts.*

The showing necessary to obtain a CoA on a particular claim is dependent on how the District Court has disposed of a claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484). In a case where the Court's dismissal is appealed based on procedural claims without reaching the underlying constitutional claim, the petitioner must show reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484. This court did not dispose of any of Frazier's federal habeas corpus claims on procedural grounds. This court addressed the merits of all of Frazier's federal constitutional claims.

Reasonable minds could not disagree with this Court's conclusion that, regardless of whether reviewed under the AEDPA or *de novo* (and regardless of whether viewed independently or collectively), all of Frazier's complaints of ineffective assistance by his trial counsel fail to satisfy the prejudice prong of *Strickland*. Frazier is not entitled to a CoA from this Court.

## CONCLUSION

Accordingly, it hereby **ORDERED** that (1) all relief requested in any of Frazier's pleadings (ECF Nos. 1-3) or his Reply Brief (ECF No. 17) is **DENIED with prejudice**; (2) Frazier is **DENIED** a Certificate of Appealability with regard to all of his claims for relief; and (3) all pending motions are **DISMISSED** as moot.

**SO ORDERED** on this **16th day of July 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

21